UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BALTNAV SINGAPORE PTE LTD, | IN ADMIRALTY |
| Plaintiff, | Case No. 2:22-cv-00780 |
| v. | VERIFIED COMPLAINT |
| IINO KAIUN KAISHA LTD, | |
| Defendant. | |

Plaintiff, Baltnav Singapore Pte Ltd, (hereinafter "Baltnav" or "Plaintiff"), by and through undersigned counsel, and hereby files this Verified Complaint against Defendant Iino Kaiun Kaisha Ltd, (hereinafter "Defendant"), and alleges as follows:

### I.  JURISDICTION AND VENUE

1. Subject matter jurisdiction of this Honorable Court is based upon admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333 and is brought under the provision of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims. This case is also an admiralty and maritime claim within the meaning of rule 9(h) of the Federal Rules of Civil Procedure for claim of breach of a maritime contract.

2. Venue is proper in this District Court pursuant to 28 U.S.C. §1391(b), because the property belonging to the Defendant, *to wit*, the M/V MAPLE GAS (IMO 9800491), is or will be located within the Western District of Washington during the pendency of this action.

VERIFIED COMPLAINT - 1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206-622-1711

## II. THE PARTIES

3. At all times material hereto, Plaintiff Baltnav Singapore Pte Ltd was and still is a business entity organized under the laws of a foreign country.

4. At all times material hereto, Defendant Iino Kaiun Kaisha Ltd was and still is a foreign business entity organized under the laws of a foreign country and operating from the address of 2-1-1, Uchisaiwaicho Iino Bldg. Chiyoda-Ku, Tokyo, 100-0011 Japan.

## III. THE FACTS

5. Plaintiff, as disponent owners, entered into a time charter party agreement with Defendant wherein Plaintiff agreed to let and Defendant agreed to hire the M/V AKTEA R. *The Charter Party Agreement is attached as Exhibit 1.*

6. The time charter party agreement dated June 16, 2021, was for "one time charter trip of GBFS in bulk via JAPAN to AUSTRALIA via safe ports(s) safe berth(s) safe anchorage(s) always within INL and ice free ports/ice free areas, vessel not to force ice or follow ice breakers always accessible, always afloat (except NAABSA as per CP); always as per latest IMO/IMSBC code reccs and regulations with harmless/lawful/non dangerous cargoes in bulk always in compliance with vessel's trading/cargo exclusion." *Id.*

7. The time charter party agreement is a maritime contract.

8. The parties agreed to arbitration of disputes arising out of the maritime contract in London with English law to apply. *Id.*

9. Pursuant to the time charter party agreement and applicable riders, Defendant was required, *inter alia*, to pay for all the fuel except as otherwise agreed; to pay for the use and hire of the Vessel at the rate of $22,000 daily; to perform all cargo handling, including but not limited to discharging at their risk and expense; to pay for any and all damage caused by stevedores during cargo operations; and pay for the cost, expense, and time of hull cleaning that may be required due to aggerated waiting period of the vessel. *See* Exhibit 1.

VERIFIED COMPLAINT - 2

10. The Vessel was delivered to Charterers at Yangpu (China) on 20th June 2021 at 08:30 LT. From there, she proceeded to Japan, where she loaded her intended cargo without issue.

11. Charterers then ordered the Vessel to the discharge port of Kwinana (Australia) where she waited at anchorage for a free berth for an extended and/or abnormally long period of time. As a result, the cargo of Granulated Blast Furnace Slag ("GBFS") became hard set in the cargo holds.

12. When the stevedores discharged the cargo they caused damage to the Vessel through, *inter alia*, the rough handling of the cargo while seeking to discharge it from the holds and using excavators as battering rams inside the cargo holds. In addition, the stevedores failed to pay proper attention when operating equipment within the holds. As a result, significant physical damage was caused to the cargo holds including to the internal pipework and ballast pipes.

13. Timely protests by the Master documenting the damage caused to the Vessel's cargo holds, piping, and equipment were provided to the charterers and stevedores. Copies of the Master's protest are attached as Exhibit 2.

14. The stevedores also failed to discharge all the cargo on board, *to wit*, 200 mt of GBFS was left in the Vessel's hold. The crew therefore had to discharge this cargo themselves at anchorage. It took the crew three days to remove the balance of the cargo during which time they discovered damage to the ballast pipe in cargo hold #3.

15. The above-mentioned damage necessitated extensive and costly repair work. Pursuant to the charter party, Defendant was responsible for all damages, losses, costs, and expenses arising from the stevedore damage to the Vessel during discharging operations.

16. Despite this obligation, Defendant has failed, neglected, and/or refused to pay all amounts due and owing to Plaintiff, thereby breaching the time charter party agreement.

VERIFIED COMPLAINT - 3

17. Further pursuant to the time charter party agreement, the Defendant was responsible for the timely payment of hire. Despite this obligation, Defendant has failed, neglected, and/or refused to pay all amounts due and owing to Plaintiff and to provide an explanation for such failure, neglect and/or refusal. All of which is in breach of the time charter party agreement.

18. The outstanding unpaid hire due and owing to Plaintiff is US$111,780.37.

19. The estimated damages, costs, and expenses caused by the stevedore damage to the vessel during discharging operations at the port of Kwinana, total no less than USD $1,572,518.30 and are itemized as follows:

   a. Cost of repairs - US$541,371.30
   b. Loss of use of vessel during repairs - US$934,720.22
   c. Bunkers consumed during repairs - US$55,201.50
   d. Survey costs associated with repairs - US$18,623.11
   e. Additional insurance premium incurred during repairs - US$11,302.17
   f. Hull cleaning made necessary by prolonged stay at port – SGD $15,500 (USD $11,300.00).

20. Defendant has been placed on notice of these damages, costs, and expenses and has received copies of all supporting invoices for the amounts due and owing under the charter party. The continued failure by Defendant to pay the amounts is a breach of the charter party agreement by Defendant.

21. Despite being duly and properly made aware of the outstanding loss, damages, and unpaid hire owed, Defendant has failed, neglected, and/or refused to remit payment in full totaling USD $1,684,298.67, which is indisputably due and owing under the charter party agreement.

VERIFIED COMPLAINT - 4

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206-622-1711

## IV. APPLICATION FOR ATTACHMENT UNDER SUPPLEMENTAL ADMIRALTY RULE B

22. Plaintiff restates and re-alleges each and every allegation contained in the above foregoing Verified Complaint.

23. Plaintiff's claim for breach of the charter party agreement is a maritime claim.

24. This is an ancillary proceeding, brought in order to obtain jurisdiction over Defendant to obtain security for Plaintiff's claims in aid of a London arbitration proceeding.

25. Interest, costs, and attorney's fees are routinely awarded to the prevailing party under English Law and the procedural rules of London arbitration. It is standard for interest to be awarded to the prevailing party in the amount of 4.5% to 5.5%, compounded quarterly.

26. Plaintiff expects to recover the following amounts in arbitration from Defendant:

| | | |
|---|---|---|
| A. | Claim: | $1,684,298.67 |
| B. | Estimated Interest for Principal Claim:<br>*2 years at 5.0 %, compounded quarterly* | $175, 981.33 |
| C. | Estimated Arbitrators Costs: | $150,000.00 |
| D. | Estimated Legal and Expert Fees: | $250,000.00 |
| | TOTAL: | **$2,260,280.00** |

27. Therefore, Plaintiff's total claim for breach of the charter party, plus applicable interest, costs, and fees in the aggregate estimated to be no less than **USD $2,260,280.00**.

28. Defendant is not present and cannot be found in the District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Law Claims. *Attached hereto is a true and correct copy of the Declaration of Philip Lempriere as Exhibit 3.* Notwithstanding, the Defendant has or will have within the District tangible or intangible personal property including assets, accounts, freights, monies, charter hire, credits,

VERIFIED COMPLAINT - 5

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206-622-1711

1  effects, payments, goods or services, bills of lading, cargo and the like, which is subject to

2  attachment as security for Plaintiff's claims.

3       29.    Plaintiff has conducted an investigation and made maritime industry inquiries

4  of Defendant's regular business activities due to the outstanding debts caused by the

5  Defendant's breach of the charter party agreement.

6       30.    Those investigations and industry inquiries have revealed that the M/T

7  MAPLE GAS (IMO 9800491) is owned by the Defendant and upon information and belief is

8  presently or will soon be presently within the Western District of Washington, *to wit* at

9  Ferndale, Washington.  *See* attached as Exhibit 4, copies of reputable maritime organizations

10 which report that Defendant is the Owner of the M/T MAPLE GAS.

11      31.    The M/T MAPLE GAS is tangible physical property of said Defendant, and

12 that Vessel along with any tangible and/or intangible property located onboard which is

13 owned by Defendant are subject to attachment as security for Plaintiff's maritime claims.

14      **WHEREFORE PREMISES CONSIDERED**, Plaintiff prays as follows:

15      A.    That process in due form of law, according to the practice of this Honorable

16 Court in matters of admiralty and maritime jurisdiction be issued against Defendant and said

17 Defendant be cited to appear and answer the allegations of this Verified Complaint;

18      B.    That if Defendant cannot be found within this district, then all of its respective

19 tangible or intangible property within this district, including physical property, or any

20 property in which Defendant has an interest, such as debts, obligations, credits, effects, or

21 property of any kind belonging to, claimed by, or held for the benefit of, the Defendant, be

22 attached and seized, including but not limited to the M/T MAPLE GAS, pursuant to

23 Supplemental Admiralty Rule B for Certain Admiralty and Maritime Claims;

24      C.    That if Defendant fails to appear and answer this matter once property has

25 been attached and notice and service of same provided consistent with the Federal Rules of

26 Civil Procedure and the Supplemental Admiralty Rules, that judgment be entered against the

VERIFIED COMPLAINT - 6

Defendant in the sum of **$2,260,280.00**, plus interest and costs, and the proceeds of the assets attached be applied in satisfaction thereof;

      D.      That the Court grant Plaintiff such other and further relief as it deems just, equitable and proper.

Dated this 6th day of June, 2022.

                SCHWABE, WILLIAMSON & WYATT, P.C.

By:   /s/ Philip R. Lempriere
        /s/ Molly J. Henry
        Philip R. Lempriere, WSBA #20304
        Email: plempriere@schwabe.com
        Molly J. Henry, WSBA #40818
        Email: mhenry@schwabe.com
        1420 5th Avenue, Suite 3400
        Seattle, WA 98101-4010

*Attorneys for Plaintiff, Baltnav Singapore Pte Ltd*

OF COUNSEL

CHALOS & CO., P.C.
55 Hamilton Avenue
Oyster Bay, NY 11771
George M. Chalos, pro hac vice forthcoming
gmc@chaloslaw.com
Briton P. Sparkman, pro hac vice forthcoming
bsparkman@chaloslaw.com

*Co-Counsel for Plaintiff Baltnav Singapore Pte Ltd*

PDX\133494\242056\MJHE\33880974.1

VERIFIED COMPLAINT - 7